MISSOURI PACIFIC RAILWAY COMPANY, PLAINTIFF IN ERROR, v. JESSE L. HAYS, DEFENDANT IN ERROR.

1. **Practice:** NEW TRIAL. The granting of a new trial will not be interfered with unless it is clearly shown that some legal right of the party objecting has been disregarded.

2. ———: MOTION FOR. Where a motion for a new trial is made for reasons which would not otherwise be apparent from the record, they should be incorporated in a bill of exceptions.

3. ———: EVIDENCE: RECORD OF: PLAT. Where, in the assessment of damages for right of way for a railroad by a jury, a plat of the land, showing the location of the road, etc., is used, a record of the evidence is not complete without it.

4. **Eminent Domain:** ASSESSMENT OF DAMAGES. In making such assessment, it is proper to consider the way in which the road cuts the land, the inconvenient shape in which the residue is left, the excavations and embankments, and the exposure of the owner's property to particular injuries from its proximity to the road, which may result from its proper construction and operation.

5. ———. The valuation of property taken for right of way for a railroad should be made as of the time of the filing of the petition for the assessment of damages to the land.

6. **Bill of Exceptions:** CERTIFICATE TO. Where from an inspection of a bill of exceptions it is apparent that material evidence has been omitted, the certificate that it contains all that was used on the trial will not be taken as conclusive on that point.

ERROR to the district court for Richardson county, where the cause had been brought on appeal by Hays from an award of damages for the location of the right of way of the M. P. R. R. over his land, etc. There was a trial, and a verdict in favor of Hays for $275. This verdict was set aside on motion of Hays and a new trial granted. At the second trial, before DAVIDSON, J., verdict in favor of Hays for $860, judgment, motion for new trial overruled, and the R. R. company came up on a petition in error.

15 224
15 232
20 372
15 224
25 51
15 224
28 99
29 430
15 224
34 663
15 224
37 5
15 224
40 381
15 224
42 135
15 224
45 38
15 224
46 853
15 224
48 36
48 674
15 224
49 554
50 158
52 469
55 240
15 224
59 66

*John L. Webster,* for plaintiff in error, on setting aside first verdict, cited: Sutherland Dam., 810. *Woodward v. Leavitt,* 107 Mass., 453. As to date when damages should be assessed, cited: *Burt v. Merchants Insurance Co.,* 115 Mass., 1. Mills Eminent Domain, § 174. *Logansport v. Buchanan,* 52 Ind., 163. *Indiana v. Hunter,* 8 Ind., 74.

*J. H. Broady,* for defendant in error, contended that granting new trial was discretionary; that the value of the land is to be estimated at time of condemnation, which is the time when it was taken, which is the time the title passes, which is the time the money is ready, which is the time it is paid into the county court, which cannot be before filing of report of assessment. *Sioux City v. Brown,* 13 Neb., 319. *F. E. & M. V. R. R. v. Whalen,* 11 Neb., 588. *Driver v. Railroad,* 32 Wis., 569. *Ray v. A. & N. R. R.,* 4 Neb., 440. *O. & N. R. R. v. Menk,* Id., 24. *Daniels v. Railroad,* 35 Iowa, 129.

LAKE, CH. J.

It is claimed that the court below erred in setting aside the first verdict and granting a new trial. The record before us is not in a condition to show upon what particular ground that ruling was made. In the motion for a new trial several reasons were assigned therefor, followed by the statement that, "Reference is hereby made to affidavits in support of some of the causes herewith filed." There is also appended to the bill of exceptions, but in no way made a part of it, the affidavits of persons representing themselves as members of the jury respecting the deliberations in the jury room, and giving reasons which induced them to finally assent to the verdict after having voted for a much larger one. There is nothing, however, which enables us to know that these are the affidavits referred to in the motion, or that they were considered by the judge in ruling upon it. Indeed, there is nothing in the record to indicate

with certainty just what the ruling was based upon. In this respect the record is strangely defective.

There is a very large discretion given to trial judges in the matter of granting new trials. By this we by no means intend to convey the idea that their rulings in this respect are not subject to review by appellate courts, but simply that, before they will be interfered with, it must be clearly shown that some legal right of the party objecting has been disregarded. *Woodward v. Leavitt*, 107 Mass., 453 (9 Am. Repts., 49).

Among the grounds assigned in the motion for the new trial are, 1st, "Irregularity in the proceedings of the jury, and of the said plaintiff." 2d, "Misconduct of the jury, and particularly of the two members, Spence and Klever, and misconduct of the said plaintiff." These were good reasons, if proved, for setting the verdict aside. Code of civil procedure, § 314. And that they were proved must be presumed in the absence of a showing to the contrary. *Credit Foncier v. Rogers*, 10 Neb., 184. *Frey v. Drahos*, 7 Id., 194. *Deroin v. Jennings*, 4 Id., 97. *Singleton v. Boyle*, Id., 414. Therefore, if the verdict were set aside on either or both of these grounds, and a review of the ruling were desired, there should have been a bill of exceptions showing just what the judge acted on. The 3d and 4th objections related to the sufficiency of the evidence, and the 5th, to rulings on its admissibility, and in charging the jury, which are, perhaps, fully disclosed by the bill of exceptions of the evidence, and the instructions, which became a part of the record on being filed by the clerk.

Our consideration of the first and second of these objections leads to the conclusion that the order granting the new trial should not be disturbed. But, in addition to this, we are unable to say that the *fifth* objection alone did not furnish a sufficient reason for the ruling complained of. Turning to the record, we discover several rulings upon the admissibility of evidence which were manifestly erro-

neous. For instance, it was shown that, in passing through the farm, the railroad skirted a small creek, and a witness was asked how the location of the track affected its value. This was objected to as "not proper evidence to go to the jury," and the objection sustained. It appeared that the farm was devoted chiefly to pasturage, and in view of that use, it was clearly competent to advise the jury particularly of the effect of a practical separation of the creek from the rest of the land.

Again, it appeared that between the right of way and creek, there was left a small, irregular strip of land, quite difficult of access by reason of the grade of the road. A witness, shown to be competent, was asked without objection, how much in value that piece was injured, and answered, "Ten dollars per acre." On motion of the plaintiff's attorney, this answer was excluded on the ground that the injury was "on account of the difficulty of getting to it, and crossing the railroad." This was error. The testimony was excluded for the very reasons which made it admissible. The injury to the owner of a farm from the building and operating of a railroad across it, is "not merely by the subtraction of so many feet, or acres, from his estate, valued as if sold for an ordinary purpose, and according to a plan devised for the most profitable use of the whole, but still more by the mode of taking, and its effect on the property which is left, viz., the way in which the railroad cuts the tract or lot, as diagonally, by a curve, or otherwise; the inconvenient shape in which the remaining part is left, the depth of excavations or height of embankments, the obstruction or entire interruption of access to public or private ways, the division of the tract or lot into different parts so that persons or cattle cannot pass from one to the other, or, if at all, only with greater or less difficulty or danger, and the exposure of the owner's property, as buildings, forests, and crops to particular injury from proximity to the railroad." Pierce on Railroads, 211.

And there were several other rulings on the evidence, to which, however, we will not take the time to refer particularly, which might have justified the court in setting the verdict aside. In this respect, therefore, we find no error.

But there are many objections made to the second trial, of which we will consider such as seem to be relied on. The first of these is to certain testimony, and the instruction to the jury thereon, relative to certain " cuts and fills " made in grading the roadway. It is contended that these were not a proper element of damage, and should have been excluded. The view of this question taken by the trial judge is thus expressed in the instruction: " In considering the damages other than the value of the land actually taken, the jury can consider the manner in which the land remaining is divided, the cuts and fills damaging the general appearance and utility of the same, if at all, and such other damages as may result from a proper construction and operation of the road."

The evidence showed that for a considerable distance in crossing this farm, there were " cuts " several feet below the natural surface of the ground, from which large and unsightly banks of earth were thrown up, and in other places " fills," which effectually prevented crossing the track except at particular and somewhat inconvenient places. It is not claimed that this grading was unnecessarily or unskillfully done; therefore, whatever its effect in lessening the value of the remaining land may have been, it was covered by the condemnation, and was a proper element of damage for the jury to consider. Pierce on Railroads, *supra*. *Delaware, etc., R. R. Co. v. Salmon*, 23 Am. Repts., 214. *F. E. & M. V. R. R. Co. v. Whalen*, 11 Neb., 585. In this connection it is claimed that testimony was admitted showing " that large quantities of earth were conveyed outside of the right of way, and placed on the land of Hays." It is true that some such testimony was incidentally given, but under circumstances which made it no just

ground of complaint. It appears that in the examination of a witness respecting the " cuts and fills" this question was put to him: "Take the deepest cut—where was the dirt thrown that came out of it?" This was "objected to as immaterial," etc., but as no ruling appears to have been made on the objection, no question was raised.

The next question in order relates to the assessment of damages—to the time as of which land taken for right of way should be valued in fixing the amount to be paid to the owner. It is an important question, and a new one in this court.

On the part of the plaintiff, it was contended on the trial, and is here, that the assessment should be made as of the time when the proceedings to condemn the property are instituted; in other words, when the petition for the appointment of commissioners to assess the damages is filed with the county judge. The court below, however, held that the jury should make the assessment as of the date of the filing of the commissioners' report, which was something over two months later. There was evidence before the jury tending to show that during this time the market value of the land had materially advanced in consequence of the location of the road. The authorities seem to agree pretty generally that the damages in such cases must be assessed as of the time of taking. Pierce on Railroads, 209. Also that the increased value given to property by the location of the road should be excluded in making the estimate. Id., 219, and cases there cited. The point of chief difficulty, however, seems to be found in determining as to just what constitutes a "taking" within the meaning of the law. The decisions on this point are not altogether harmonious, but the better rule and weight of authority seems to be as contended for by the plaintiff, viz., that the definite location of the line of the road, and application for the appointment of commissioners to assess the damages, constitute a taking, and that the rights of parties respect-

ing it are then fixed, and in case of disagreement respecting them, should be judged as of the time when these things were done.

In the case of *Charlestown Branch R. Co. v. County Commissioners*, 7 Met., 78, the question was whether the application for an estimate of damages had been made within three years, as the law required, from the time of *taking* the property. In the opinion of the court, by Wilde, J., it is said that "this depends on the true meaning of the words 'taking the same.' The respondent's counsel contend that the lands were not taken until the company entered thereon, and commenced making their road. On the other hand, it is contended in behalf of the petitioners that the location of their road, and the filing of the same in the office of the county commissioners was a taking within the true meaning of the statute." The holding of the court conformed to the latter view.

In the case of *The Logansport, etc., R. W. Co. v. Buchanan*, 52 Ind., 163, it appears there had been a proceeding to condemn lands for the use of the company's road. On an application, the clerk of the circuit court had appointed appraisers, who had performed their duties, and returned their assessment of damages to him. On the trial of an appeal from the award, the verdict was for an increased amount, and proceedings in error were prosecuted on the ground that the court had permitted several witnesses to testify as to the value of the land at the time of the trial. It was held that the testimony ought to have been confined to the value at the time of filing the application for the appointment of appraisers with the clerk, and the verdict was accordingly set aside. And a like ruling is found in *Lafayette, etc., R. Co. v. Murdock*, 68 Ind., 137, wherein an instruction to the jury that their inquiries as to the amount of damages sustained by the land owner should relate to the time of the appropriation, was upheld. The act of appropriation there being, as before stated, the

application to the clerk of the circuit court for the appointment of appraisers of damages. See also *Graham v. Connersville, etc., Railroad Co.*, 36 Ind., 463 (10 Am. Reports, 56). And precisely the same principle was applied in the case of *South Park Commissioners v. Dunlevy et al.*, 91 Ill., 49, in which it was held that: "On petition to condemn lands for public use, the compensation to be paid must be fixed by the valuation of the property at the date of the filing the petition, and not at the time of trial."

The principle of these decisions, which requires compensation for property taken for public use to be estimated with special reference to its value at the time of the appropriation or taking, is manifestly just to all concerned. By no other rule, in cases of condemnations for uses of great public interest and local benefit, could the valuation of property in the assessment of damages be so successfully guarded against the influence of enhanced values resulting specially from the enterprise. We are of opinion that the several rulings of the court below involving this question were erroneous.

It is claimed finally that the damages awarded by the jury are excessive. In the light of the evidence preserved by the bill of exceptions they seem to be so, but for the reason that a very important item—a plat of the farm and road across it, etc.—illustrative of many of the questions and answers is not before us, we cannot so decide. In such cases a plat may be and frequently is an important and influential part of the evidence, and where one is used a record of the trial is not complete without it. The omission of the plat from this record makes obscure and practically worthless considerable testimony which by its aid may, on the trial, justly have had much weight with the jury. Where all of the evidence used on a trial is not before us we cannot say that the finding was unsupported.

It is true that the certificate to the bill of exceptions is to the effect that it is complete and contains all the evi-

dence produced on the trial. But we find within the bill itself, in the questions and answers especially, incontestable proof that it does not. Where such is the case the certificate will not be taken as conclusive on that point.

REVERSED AND REMANDED.

THE other judges concur.